UNITED STATES of America, Plaintiff–Appellee,

v.

Curtis Dale SMITH, Defendant–Appellant.

No. 93–5631.

United States Court of Appeals, Fourth Circuit.

Argued March 11, 1994.

Decided Aug. 5, 1994.

**ARGUED:** Steven Morris Askin, Askin, Burke & Schultz, Martinsburg, WV, for appellant. Thomas Oliver Mucklow, Asst. U.S. Atty., Wheeling, WV, for appellee. **ON BRIEF:** William D. Wilmoth, U.S. Atty., Wheeling, WV, for appellee.

Before MURNAGHAN and HAMILTON, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

Affirmed by published opinion. Senior Judge PHILLIPS wrote the opinion, in which Judge MURNAGHAN and Judge HAMILTON joined.

## OPINION

PHILLIPS, Senior Circuit Judge:

In 1991, Curtis Dale Smith and two other individuals were indicted in the Northern District of West Virginia on multiple charges arising out of their alleged participation in a conspiracy to distribute cocaine. At their joint trial, the jury found Smith guilty on 18 different counts, and the district court sentenced him to 211 months in prison and a fine of $20,000. He now appeals, challenging his convictions and sentence on a number of different grounds. We affirm.

### I.

Smith argues first that the district court erred in denying his motion to suppress evidence of certain incriminating telephone conversations that state law enforcement officers intercepted through court-authorized electronic surveillance of his home telephone. Smith contends that these conversations were intercepted in violation of state and federal law, and that the district court should therefore have suppressed them under 18 U.S.C. § 2518(10)(a), which makes evidence of telephone communications intercepted by wiretap inadmissible in federal court if those communications were "unlawfully intercepted."

The federal wiretap statute makes it unlawful to intercept telephone communications

by wiretap, except as specifically provided for in the statute. 18 U.S.C. § 2511 (1970 & Supp.1994). The statute specifically provides that state law enforcement officers may use wiretaps to obtain evidence of drug-trafficking activities when authorized to do so by an order issued by an appropriate state court judge, provided that order is issued "in conformity with section 2518 of this chapter and with the applicable State statute." *Id.* § 2516(2) (1970 & Supp.1994). Section 2518(3)(c) permits a judge to issue a wiretap order only after making a specific finding that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." Section 2518(1)(c) requires a wiretap application to contain "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." The applicable state wiretap statute, the West Virginia Wiretapping and Electronic Surveillance Act, contains substantially similar provisions. *See* W.Va.Code § 62–1D–11(c)(3) (Michie 1992) (permitting judge to issue wiretap order only after making specific finding that "[n]ormal investigative procedures have been tried and have failed and reasonably appear to be unlikely to succeed if attempted again, or that to do so would be unreasonably dangerous and likely to result in death or injury or the destruction of property"); *id.* § 62–1D–11(a)(3) (requiring application for wiretap order to contain "[a] full and complete statement showing that other investigative procedures have been tried and failed and why such procedures reasonably appear to be unlikely to succeed if again attempted or that to do so would be unreasonably dangerous and likely to result in death or injury or the destruction of property").

The wiretap in question here was placed on Smith's telephone pursuant to an order of authorization issued by an appropriate state court judge. The order contained an express finding of fact, based on the facts recited in the government's application and its supporting affidavit, that "normal investigative procedures have been tried and failed or reasonably appear unlikely to succeed if tried or to be too dangerous." Smith nonetheless contends that the order was invalid under the federal and state wiretap statutes, because the government's application did not contain sufficient facts to satisfy 18 U.S.C. § 2518(1)(c) and W.Va.Code § 62–1D–11(a)(3) or to support the issuing court's finding under 18 U.S.C. § 2518(3)(c) and W.Va. Code § 62–1D11(c)(3). We disagree.

## A.

We first reject Smith's assertion that the government's application did not contain sufficient facts to satisfy 18 U.S.C. § 2518(1)(c) and support the issuing court's § 2518(3)(c) finding. Sections 2518(1)(c) and (3)(c) are designed to ensure that the relatively intrusive device of wiretapping is neither "routinely employed as the initial step in criminal investigation," *United States v. Giordano,* 416 U.S. 505, 515, 94 S.Ct. 1820, 1827, 40 L.Ed.2d 341 (1974), nor "resorted to in situations where traditional investigative techniques would suffice to expose the crime." *United States v. Kahn,* 415 U.S. 143, 153 n. 12, 94 S.Ct. 977, 983 n. 12, 39 L.Ed.2d 225 (1974). As we have said time and again, however, the burden that these provisions impose upon the government to show the inadequacy of normal investigative techniques is not great, and the adequacy of such a showing is "to be tested in a practical and commonsense fashion," *United States v. Clerkley,* 556 F.2d 709, 714 (4th Cir.1977) (internal quotations omitted), *cert. denied,* 436 U.S. 930, 98 S.Ct. 2830, 56 L.Ed.2d 775 (1978), that does not "hamper unduly the investigative powers of law enforcement agents." *United States v. Leavis,* 853 F.2d 215, 221–22 (4th Cir.1988); *see United States v. Depew,* 932 F.2d 324, 327 (4th Cir.), *cert. denied,* — U.S. ——, 112 S.Ct. 210, 116 L.Ed.2d 169 (1991); *United States v. Muldoon,* 931 F.2d 282, 285 (4th Cir.1991). While the government cannot discharge its burden with "bare conclusory statements that normal techniques would be unproductive," *United States v. Ashley,* 876 F.2d 1069, 1072 (1st Cir.1989), or "mere 'boilerplate recitation of the difficulties of gathering usable evidence,'" *Leavis,* 853 F.2d at 221, it is not required to show that other methods have

been "wholly unsuccessful," *Ashley*, 876 F.2d at 1072, or that it has exhausted "*all* possible alternatives to wiretapping." *Clerkley*, 556 F.2d at 715 (emphasis in original). Instead, it need only present "specific factual information," *Leavis*, 853 F.2d at 222, sufficient to establish that it " 'has encountered difficulties in penetrating [the] criminal enterprise or in gathering evidence—to the point where ... wiretapping becomes reasonable,' " given " 'the statutory preference for less intrusive techniques.' " *Ashley*, 876 F.2d at 1072 (*quoting United States v. Abou–Saada*, 785 F.2d 1, 11 (1st Cir.), *cert. denied*, 477 U.S. 908, 106 S.Ct. 3283, 91 L.Ed.2d 572 (1986)); *see Leavis*, 853 F.2d at 222 (that the "extraordinary" and highly "intrusive[ ]" technique of wiretapping is "necessary to probe a [criminal enterprise] that might otherwise have proved impossible to penetrate").

■ Although we have held that the adequacy of the government's § 2518(1)(c) showing is to be tested "in a practical and commonsense fashion," *Leavis*, 853 F.2d at 221; *Clerkley*, 556 F.2d at 714, we have yet to decide what standard should be applied in reviewing an issuing court's § 2518(3)(c) finding, either on direct appeal from the wiretap order itself or in a subsequent motion to suppress its fruits. The circuits that have addressed this question agree that the standard should be one that gives considerable deference to the issuing judge's judgment, though they describe that deferential standard in several different ways.[1] We need not decide which of these various formulations of the standard of review is most appropriate to

decide this case, however, for we find that under any of them, the facts submitted in this wiretap application were sufficient not only to discharge the government's § 2518(1)(c) burden, but also to support the issuing court's § 2518(3)(c) finding.[2]

The application was supported by the 27–page affidavit of Officer Fred Wagoner, a 10–year veteran of the West Virginia State Police with significant training and experience in undercover investigation of drug-trafficking activities. Smith asserts that this affidavit was utterly "devoid" of any evidence that the police had made any effort to try more traditional investigative procedures before applying for the wiretap, but consisted entirely of "bare conclusory statements" that they believed such procedures would be unproductive. Our review of the affidavit itself, however, convinces us that it was fully adequate both to satisfy § 2518(1)(c) and to support the issuing court's § 2518(3)(c) finding.

The affidavit began by explaining, in considerable detail, the various "traditional" investigative procedures that the police had been using to investigate Smith's drug-distribution operation during the nine months preceding the wiretap application. These included interviewing a number of different cooperative witnesses and confidential informants; tracing telephone calls to and from Smith's telephones; visiting his home several times to interview him; conducting ordinary physical surveillance of his home; and attempting to set up controlled transactions

---

1. Some circuits treat the issuing judge's § 2518(3)(c) finding as a finding of fact which must be accepted by reviewing courts unless clearly erroneous. *See United States v. Davis*, 882 F.2d 1334, 1343 (8th Cir.1989), *cert. denied*, 494 U.S. 1027, 110 S.Ct. 1472, 108 L.Ed.2d 610 (1990). Others will affirm a § 2518(3)(c) finding so long as the facts set forth in the affidavit provide a "factual predicate" for it, *see United States v. Zambrana*, 841 F.2d 1320, 1329–30 (7th Cir.1988); *United States v. Armocida*, 515 F.2d 29, 38 (3d Cir.), *cert. denied*, 423 U.S. 858, 96 S.Ct. 111, 46 L.Ed.2d 84 (1975); or are "minimally adequate" to support it, *see United States v. Scibelli*, 549 F.2d 222, 226 (1st Cir.), *cert. denied*, 431 U.S. 960, 97 S.Ct. 2687, 53 L.Ed.2d 278 (1977); *United States v. Torres*, 901 F.2d 205, 231 (2d Cir.), *cert. denied*, 498 U.S. 906, 111 S.Ct. 273, 112 L.Ed.2d 229 (1990). Still others review the issuing judge's § 2518(3)(c) finding for abuse

of discretion only, though they review *de novo* the issuing judge's determination that the government's application complied with § 2518(1)(c)'s "full and complete statement" requirement. *See United States v. Brone*, 792 F.2d 1504, 1506 (9th Cir.1986) (Kennedy, J.).

2. Because 18 U.S.C. §§ 2518(1)(c) and (3)(c) are worded in the disjunctive, the government may establish the need for a wiretap by showing *either* (i) that normal investigative procedures have been tried and failed, *or* (ii) that normal investigative procedures, though not yet tried, "reasonably appear" to be either "unlikely to succeed if tried" or "too dangerous." *Clerkley*, 556 F.2d at 715. In reality, this gives the government three alternative ways to establish the need for a wiretap. *See Zambrana*, 841 F.2d at 1329.

with him through a former supplier of his who was cooperating with the government. The affidavit explained that through these procedures, the police had been able to obtain some evidence against Smith himself, but that they had not been able to determine the identities of his co-conspirators, his current suppliers, or his major customers. The affidavit then explained, again in some detail, why the police believed that continued use of these and other "normal investigative procedures"—including ordinary physical surveillance, use of regular search warrants, use of confidential informants, and infiltration of the organization by undercover agents or informants [3]—was unlikely to produce this critical information.

 The affidavit first explained why the police believed that ordinary physical surveillance was not likely to provide the information sought. It stated that Smith conducted most of his drug-trafficking business over the telephone and in closely-guarded personal meetings at his house, and that the police could not get close enough to overhear any of these conversations, because the house was located in an isolated area which could not be approached without arousing suspicion and Smith was employing counter-surveillance devices to protect it. These facts were sufficient to permit the issuing court to conclude that ordinary physical surveillance was not likely to be successful. *See Leavis,* 853 F.2d at 221 (affidavit adequately demonstrated that ordinary physical surveillance was inadequate, where it explained that the suspects were employing countersurveillance techniques, that the house from which they were conducting their drug-dealing operations was situated in a location that made physical surveillance difficult, and that physical surveillance would reveal at best the identities of individuals who came into contact with the suspects, but not the nature of their relationship with them, which was critical to proving the conspiracy); *Muldoon,* 931 F.2d at 285 (affidavit adequately demonstrated that physical surveillance was inadequate where it

showed that the suspected conspirators conducted virtually all of the business of the conspiracy over the telephone).

 The affidavit then explained why the police believed that the use of normal search warrants was not likely to uncover the evidence sought. It stated that the investigating officers had reason to believe, based on information obtained from confidential informants, that Smith conducted virtually all of his drug-trafficking business over the telephone and in carefully-guarded personal meetings. It also stated that the affiant had reason to believe, based on his special knowledge and experience with drug-trafficking organizations, that any written records which the Smith organization might maintain (such as telephone numbers of his co-conspirators, customers, and supplies and records of transactions) were likely to be written in code or abbreviated form that would be decipherable only by the person or persons responsible for maintaining them. This information was sufficient to permit the issuing court to conclude that the use of ordinary search warrants was not likely to produce the information sought. *See Clerkley,* 556 F.2d at 713–15 (affidavit adequately established that use of normal search warrants was inadequate, where it stated that affiant knew from past experience with criminal enterprises of the same basic type that they were unlikely to keep incriminating records at all, and that if they did, they were likely to be in a form that could not be deciphered by the police); *Ashley,* 876 F.2d at 1072 (issuing court may properly take into account affirmations in affidavit which are founded in part upon the experience of specially trained agents).

 The affidavit next explained why the continued use of confidential informants was not likely to provide any further useful information about the conspiracy. It stated that the police had exhausted the knowledge of all known informants; that they knew of no one else who was willing to provide them with information about the conspiracy or to testify

---

**3.** The legislative history of the federal wiretap statute indicates that Congress intended the term "normal investigative procedures" in § 2518(3)(c) to include "standard visual or aural surveillance techniques by law enforcement offi-

cers, general questioning or interrogation under an immunity grant, use of regular search warrants, and the infiltration of conspiratorial groups by undercover agents or informants." 1968 U.S.Code Cong. & Ad.News at 2190.

about it in court; and that they did not believe that any of the participants in the conspiracy would testify about it before a grand jury, even under subpoena, without a grant of immunity, which would alert those involved in the conspiracy to the investigation. These facts were sufficient to permit the issuing court to conclude that continued use of confidential informants was not likely to be productive. *See Leavis,* 853 F.2d at 221 (affidavit sufficiently demonstrated that the continued use of confidential informants was inadequate in a drug conspiracy investigation, when it explained that the informant who had been used previously was not in a position to provide information about the complete scope and nature of the conspiracy or to identify the chief suspect's coconspirators); *Muldoon,* 931 F.2d at 285 (affidavit sufficiently demonstrated that the continued use of confidential informants was inadequate, where it explained that the informant who had been used previously was in jail on unrelated charges and that it would be difficult to introduce a new informant to the conspirators).

 Finally, while the affidavit did not state explicitly that the police believed infiltration of the Smith organization by undercover agents or informants to be too dangerous to be a reasonable option, it contained sufficient facts from which the issuing court could reasonably have concluded that this was the case. It stated that the one person who had been willing to participate in undercover infiltration of the Smith organization—the former supplier—was no longer available because he was in jail on unrelated charges. It also stated that Smith kept a large number of firearms at his home; that he was employing countersurveillance devices; that he and his family had previously engaged in a number of different acts of violence and retribution against police officers who attempted to interfere with their criminal activities and

people who agreed to testify or inform against them; and that his reputation for violence made most people in the area reluctant to provide information against him. These facts were sufficient to permit the issuing court to conclude that the option of undercover infiltration was too dangerous to be a reasonable option. *Cf. Ashley,* 876 F.2d at 1072 (government is not required "to run outlandish risks" before requesting a wiretap).[4]

We conclude that the wiretap order was issued in conformity with 18 U.S.C. §§ 2518(1)(c) and (3)(c).

**B.**

 We also reject Smith's argument that the wiretap order was not issued in compliance with the West Virginia Wiretapping and Electronic Surveillance Act, W.Va.Code §§ 62–1D–11(a)(3) and (c)(3). The West Virginia statute is relatively new, and there are apparently no state or federal cases construing the relevant provisions of it. Though those provisions are modelled on 18 U.S.C. §§ 2518(1)(c) and (3)(c), their language is slightly different from that of their federal counterparts. The most noticeable difference is that, unlike their federal counterparts, the state provisions do not appear to allow the government to establish the need for a wiretap simply by demonstrating that normal investigative procedures, though not yet tried and not shown to be unreasonably dangerous, "reasonably appear to be unlikely to succeed if tried." *Compare* 18 U.S.C. § 2518(3)(c) (that "normal investigative procedures have been tried and have failed *or* reasonably appear to be unlikely to succeed if tried *or* to be too dangerous") (emphasis added); *id.* § 2518(1)(c) (same), *with* W.Va. Code § 62–1D–11(c)(3) (that "[n]ormal investigative procedures have been tried and have failed *and* reasonably appear to be unlikely to succeed if attempted again, *or* that to do

---

4. In challenging the issuing court's § 2518(3)(c) finding that normal investigative techniques were unlikely to succeed, Smith places great weight on the fact that two undercover police officers were able to make a controlled buy from Smith several days after the wiretap was installed. We do not think this evidence has any relevance here. The validity of the issuing court's § 2518(1)(c) finding is to be judged in light of the information presented to it in the wiretap application. Evidence that the officers who sought the wiretap had some success with normal investigative techniques *after* the wiretap order was issued does not establish that the issuing court erred in concluding, at the time the wiretap application was made, that these techniques were *unlikely* to succeed.

so would be unreasonably dangerous and likely to result in death or injury or the destruction of property") (emphasis added); *id.* § 62–1D–11(a)(3) (same). But this difference is of no consequence where, as here, the government has made an adequate showing that normal investigative techniques have already been tried and found to be unsuccessful, and that the continued use of such techniques reasonably appears to be either "unlikely to succeed" or "unreasonably dangerous and likely to result in death or injury." *See supra* at 1298–1300. We therefore conclude that the wiretap order was issued in conformity with W.Va.Code §§ 62–1D–11(a)(3) and (c)(3).[5]

For the foregoing reasons, we conclude that the district court did not err in denying Smith's motion to suppress the wiretap evidence and permitting the government to introduce it against him at trial.

## II.

 Smith contends next that the district court erred in denying his Jencks Act motion for production of certain notes taken by a prosecutor during a pretrial interview of a government witness. The Jencks Act gives the defendant in a federal criminal prosecution the right to examine and use, following the direct examination of a government witness, any "statement" of that witness which is "in the possession of the United States" and "relates to the subject matter as to which the witness has testified." 18 U.S.C. § 3500(b).[6] The term "statement" in

§ 3500(b) is defined by statute to include, among other things, "a written statement made by said witness and signed or otherwise adopted or approved by him." 18 U.S.C. § 3500(e)(1). Notes taken by prosecutors and other government agents during a pretrial interview of a witness may qualify as a "statement" of the witness under § 3500(e)(1) if the witness has reviewed them in their entirety—either by reading them himself or by having them read back to him—and formally and unambiguously approved them—either orally or in writing—as an accurate record of what he said during the interview. See *Goldberg v. United States,* 425 U.S. 94, 110 & n. 19, 96 S.Ct. 1338, 1348 & n. 19, 47 L.Ed.2d 603 (1976); *see also id.* at 113–16, 96 S.Ct. at 1349–51 (Stevens, J., concurring); *id.* at 125, 96 S.Ct. at 1355 (Powell, J., concurring); *Campbell v. United States,* 373 U.S. 487, 492 & n. 6, 83 S.Ct. 1356, 1359–60 & n. 6, 10 L.Ed.2d 501 (1963) (*Campbell II*).[7] Evidence that a government agent has discussed the "general substance" of what the witness said during the interview with him will not suffice to show that the witness has "adopted or approved" the agent's notes of that interview for purposes of § 3500(e)(1). *Goldberg,* 425 U.S. at 110 n. 19, 96 S.Ct. at 1348 n. 19. Whether a particular set of interview notes has been "adopted or approved" by a witness for purposes of § 3500(e)(1) is a question of fact for the district judge, which will be set aside on appeal only if clearly erroneous. *Campbell II,* 373 U.S. at 493, 83 S.Ct. at 1360–61;

---

**5.** Though the issuing court's order did not track the exact language of W.Va.Code § 62–1D–11(c)(3), we agree with the district court that its findings were sufficient to comply with that provision.

**6.** A virtually identical provision appears in Rule 26.2 of the Federal Rules of Criminal Procedure. The Rule, which became effective in 1980, was intended to replace the provisions of the Jencks Act dealing with discovery of prior statements of testifying witnesses, on "the notion that provisions which are purely procedural in nature should appear in the Federal Rules of Criminal Procedure rather than in Title 18." Advisory Committee Note to Fed.R.Crim.Proc. 26.2; *see* 2 C. Wright, *Federal Practice and Procedure:* Criminal § 417, at 566 (1982). But Congress has never repealed the Jencks Act, and both courts and litigants continue to rely upon it in dealing

with defense motions for production of the prior statements of government witnesses. Because the motion at issue here was couched in terms of the Jencks Act, rather than Rule 26.2, and the court below analyzed it under the Act rather than the Rule, we do so as well. We note, however, that because Rule 26.2 incorporates the relevant provisions of the Jencks Act without substantive change, *see id.* § 437, at 589, the result here would be the same if analyzed under the Rule rather than the Act.

**7.** Notes taken by third parties during witness interviews may also qualify as a "statement" of the witness under § 3500(e)(2), if they are "substantially verbatim." *See* 18 U.S.C. § 3500(e)(2). Smith did not argue, either here or before the district court, that the notes at issue here fall into that category.

*United States v. Herrero,* 893 F.2d 1512, 1522 (7th Cir.), cert. denied, 496 U.S. 927, 110 S.Ct. 2623, 110 L.Ed.2d 644 (1990); *United States v. Miller,* 771 F.2d 1219, 1231–32 (9th Cir.1985); *Matthews v. United States,* 407 F.2d 1371, 1376 (5th Cir.1969), *cert. denied,* 398 U.S. 968, 90 S.Ct. 2177, 26 L.Ed.2d 554 (1970); *cf. United States v. Escamilla,* 467 F.2d 341, 345 (4th Cir.1972) (en banc) (reviewing district court's finding that witness had made no "statement" producible under the Act under a clearly erroneous standard).

The notes whose production Smith sought were taken during the pretrial interview of Thomas Hartman, a former customer of Smith's who testified against him at trial. On cross-examination, Hartman was asked whether he had given government investigators any signed, written statements about his dealings with Smith. He said that he had not, but that the investigators had taken notes during his interview. When asked whether the investigators had had him review those notes to make sure they were accurate, he responded somewhat ambiguously, "They talked to me about them." Smith then moved for production of the investigators' notes, arguing that they were potential Jencks Act material because Hartman may have reviewed them and "adopted or approved" them as his own statement. The United States opposed the motion, arguing that the notes were not "statements" under the Act, because the witness had not reviewed or otherwise adopted them as his own. At Smith's request, the court stopped the cross-examination and asked the government to submit the notes to it for inspection. The government complied, and the court then examined the notes itself and asked the prosecutor who had taken them. The prosecutor said that he had, and that he had never shown them to Hartman or asked him to review them or otherwise to adopt them as his own statement. When the defense produced no evidence to contradict this evidence, the court ruled that the notes were not "statements" of the witness producible under the Jencks Act.

■■■■■ On appeal, Smith argues principally that the district court erred by not conducting a more extensive inquiry into the Jencks Act question before denying his request for production. He contends specifically that the district court should have conducted either a more substantial *in camera* review or a separate evidentiary hearing. We disagree. As the Supreme Court has recognized, the Jencks Act itself provides no procedure for determining whether material sought by the defendant is within its scope. *Palermo v. United States,* 360 U.S. 343, 354, 79 S.Ct. 1217, 1225–26, 3 L.Ed.2d 1287 (1959). It is well-established, however, that a court may not deny a defendant's request for production under the Jencks Act based solely on the government's unsubstantiated assertions that it has not withheld any Jencks Act material, but is obligated to conduct an independent inquiry into the circumstances surrounding the creation of the materials sought, to determine whether they are in fact "statements" of the witness under the Act. *See Goldberg,* 425 U.S. at 108–09, 96 S.Ct. at 1347; *Campbell v. United States,* 365 U.S. 85, 92–95, 81 S.Ct. 421, 425–26, 5 L.Ed.2d 428 (1961) (*Campbell I*); *Palermo,* 360 U.S. at 354–55, 79 S.Ct. at 1225–26. *See generally* Wright, *supra,* § 438, at 603 & n. 13 (1982 & Supp.1994) (Rule 26.2). While this inquiry must be "careful," *United States v. Truong Dinh Hung,* 629 F.2d 908, 920 (4th Cir.1980), it need not be a full-blown "adversary proceeding," *Campbell I,* 365 U.S. at 95, 81 S.Ct. at 426, and the district court has "substantial latitude" in deciding what it will entail. *Matthews,* 407 F.2d at 1376; *see United States v. Gross,* 961 F.2d 1097, 1104 (3d Cir.) (district court's decision about what procedures to follow in conducting this inquiry is reviewed on appeal for abuse of discretion only), *cert. denied,* —— U.S. ——, 113 S.Ct. 439, 121 L.Ed.2d 358 (1992). The court's inquiry may, and normally should, begin with *in camera* inspection of the materials in question, unless it is clear that they cannot be Jencks Act material. *See Palermo,* 360 U.S. at 354, 79 S.Ct. at 1225–26; *Herrero,* 893 F.2d at 1524; *United States v. Pierce,* 893 F.2d 669, 675 (5th Cir.1990), *cert. denied,* —— U.S. ——, 113 S.Ct. 621, 121 L.Ed.2d 554 (1992); *United States v. Page,* 808 F.2d 723, 730–31 (10th Cir.), *cert. denied,* 482 U.S. 918, 107 S.Ct. 3195, 96 L.Ed.2d 683

(1987); *United States v. Allen,* 798 F.2d 985, 995 (7th Cir.1986). If, after examining the materials, the court believes that extrinsic evidence is necessary to determine whether they are Jencks Act materials, it may conduct an informal hearing to gather such evidence, *see Goldberg,* 425 U.S. at 108, 96 S.Ct. at 1347; *Palermo,* 360 U.S. at 354–55, 79 S.Ct. at 1225–26, which may include interrogation of the government agent who took the notes and/or the witness alleged to have adopted them. *See Campbell I,* 365 U.S. at 92–99, 81 S.Ct. at 425–29. But the court is not required to conduct such a hearing in every case, and *in camera* review is sufficient to discharge its duty of inquiry "in the vast majority of cases." *Gross,* 961 F.2d at 1105; *see United States v. North American Reporting, Inc.,* 761 F.2d 735, 738–39 (D.C.Cir.) (finding no error in district court's determination that evidentiary hearing was unnecessary to resolve Jencks Act dispute), *cert. denied,* 474 U.S. 905, 106 S.Ct. 273, 88 L.Ed.2d 234 (1985); *cf. Palermo,* 360 U.S. at 354, 79 S.Ct. at 1225–26 ("It is . . . the function of the trial judge to decide, in light of the circumstances of each case, what, if any, evidence extrinsic to the statement itself may or must be offered to prove the nature of the statement").[8]

■ We think the inquiry conducted by the district court here was adequate to discharge its duty under the Jencks Act. The record indicates that the court not only inspected the notes whose production was sought *in camera,* but also interrogated the prosecutor who had taken them about the circumstances surrounding their creation. The prosecutor stated that Hartman had never been asked to review the notes to affirm their accuracy, and Smith offered no evidence to contradict that statement, despite his lawyer's repeated efforts to elicit testimony to that effect from Hartman on cross-examination.[9] On this record, we cannot agree with Smith that the district court erred in failing to conduct a more extensive inquiry into the circumstances surrounding the making of the notes. *See North American,* 761 F.2d at 738–39 (district court's Jencks Act inquiry, which included consideration of prosecutor's affidavits and *in camera* inspection of notes in question, but no evidentiary hearing, was "entirely adequate" to discharge its duty of independent inquiry under the Act).

■ To the extent Smith's argument is not that the district court failed to conduct an adequate inquiry into the Jencks Act question, but simply that it erred in finding that the materials sought were not "statements" of the witness within the meaning of the Act, we reject it. The prosecutor's statement that the witness had not seen, reviewed, or otherwise adopted the notes as his own was expressly confirmed by the witness himself later on in his cross-examination, and was not contradicted by any evidence put forth by Smith. On this record, we cannot say that the district court's finding that the notes in question were not "adopted or approved" by the witness is clearly erroneous. *See Miller,* 771 F.2d at 1232 ("the unrefuted testimony of a note-taking government agent is adequate

---

8. The case upon which Smith places principal reliance, *United States v. Smith,* 984 F.2d 1084 (10th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 204, 126 L.Ed.2d 161 (1993), is not to the contrary. *Smith* holds only that when the defendant has made a "prima facie showing" that a statement of the witness exists that might be producible under the Act, it is error for the district court to deny his demand for production without *either* a hearing or *in camera* review. *Id.* at 1086.

9. Smith's attorney tried on two separate occasions during his cross-examination of Hartman to get him to say that he had reviewed the notes taken by the government agent during his interview and adopted or approved them as his own statement. In his first such effort, he asked Hartman whether he had "review[ed] the notes with [the investigators] so you were sure what

they wrote down, and they were sure what they wrote down was accurate?" JA 635. Hartman responded with the ambiguous "They talked to me about them" answer that provoked the district court's Jencks Act inquiry. *Id.* The second effort, which came after the district court had already denied the Jencks Act request, produced the following colloquy:

> Q: So, somebody was writing down what you were saying or writing down something while you were speaking, correct?
> A: Yes.
> Q: Did you ever look at them to see if what they wrote down was accurate, as far as what you told them?
> A: I have never seen nothing that has been wrote.

JA 695.

to establish that materials are not statements within the meaning of the Jencks Act"); *Gross,* 961 F.2d at 1105 (affirming district court's finding that notes taken by government agent during pre-trial interview of witness were not "statements" of the witness under § 3500(e)(1), where both prosecutor who made notes and witness himself submitted affidavits stating that witness had not adopted or approved them, and defense failed to produce any evidence to the contrary).[10]

We conclude that the district court did not err in its resolution of Smith's request for production under the Jencks Act.

### III.

Smith also challenges his convictions on several other grounds. He contends that the district court erred in denying his motion for mistrial or severance based on allegedly antagonistic defenses; in overruling various objections that he made to the prosecutor's closing argument; in denying his motion to suppress certain evidence seized from his home pursuant to a search warrant that he claims was defective; in refusing his request for an instruction on the defense of intoxication; and in denying his request to dismiss several counts of the indictment as duplicative. In addition, he raises a number of different challenges to the sentence imposed upon him. We have carefully considered each of these arguments and find them to be without merit. The convictions and sentence are therefore

*AFFIRMED.*

---

10. Smith also argues that the district court erroneously based its finding that the notes were not Jencks Act material on a finding that they contained no exculpatory material. There is no merit to this argument. After the court had denied Smith's request for production of the notes under the Jencks Act, his counsel made a separate motion for disclosure of any exculpatory evidence in the notes to which the defense might be entitled under *Brady,* together with a request that the court conduct an *in camera* review of the notes to determine whether they did in fact contain any such material. At the charge conference, the court stated that it had conducted the

requested *in camera* inspection, but that it had found no "exculpatory" material in the notes to which the defense would be entitled under *Brady.* The court did not at any time suggest that its finding that the notes contained no exculpatory material formed the basis for its earlier denial of Smith's separate motion for production of the notes under the Jencks Act. *See United States v. Truong Dinh Hung,* 667 F.2d 1105, 1107 (4th Cir.1981) (recognizing that *Brady* and the Jencks Act impose separate and independent obligations of production upon the prosecution), *cert. denied,* 454 U.S. 1144, 102 S.Ct. 1004, 71 L.Ed.2d 296 (1982).