**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 05-4146**

UNITED STATES OF AMERICA,

Plaintiff- Appellee,

versus

RONALD PIRTLE,

Defendant - Appellant.

Appeal from the United States District Court for the District of Maryland, at Baltimore.  Marvin J. Garbis, Senior District Judge. (CR-03-335-MJG)

Submitted:  January 6, 2006          Decided:  March 29, 2006

Before WIDENER and GREGORY, Circuit Judges, and HAMILTON, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

David W. Lease, SMITH, LEASE & GOLDSTEIN, L.L.C., Rockville, Maryland, for Appellant.  Rod J. Rosenstein, United States Attorney, Paul M. Tiao, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

Ronald Pirtle appeals his jury conviction and sentence for one count of conspiracy to distribute and to possess with the intent to distribute fifty grams or more of cocaine base (crack), 21 U.S.C. §§ 841(b)(1)(A) and 846. The district court sentenced Pirtle to life imprisonment. On appeal, Pirtle presses several claims. After thoroughly reviewing the record, we affirm Pirtle's conviction and sentence.

Pirtle first claims that the district court erred when it denied his motion to suppress evidence obtained pursuant to two wiretap orders, one on May 7, 2003, the other on June 11, 2003. With regard to the May 7 wiretap order, Pirtle contends that the government failed to exhaust normal, less intrusive investigative procedures prior to applying for the wiretap order. With regard to the June 11 wiretap order, Pirtle contends that the wiretap order was unnecessary because the objectives of the wiretap order had been obtained.

Turning to the May 7 wiretap order, 18 U.S.C. § 2518(3)(c) permits a district court to issue a wiretap order only after making a specific finding that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." Section 2518(1)(c) requires a wiretap application to contain "a full and complete statement as to whether or not other investigative procedures have

been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous."

In discharging its burden, the government cannot rely on conclusory statements that normal techniques would be unproductive or that gathering usable evidence has been difficult. United States v. Smith, 31 F.3d 1294, 1297 (4th Cir. 1994). However, the government is not required to show that other methods have been "wholly unsuccessful," or that it has exhausted "all possible alternatives to wiretapping." Id. at 1298 (citation and internal quotation marks omitted). Instead, the government need only present specific factual information sufficient to establish that it has encountered difficulties in penetrating the criminal enterprise or in gathering evidence to the point where wiretapping becomes reasonable given the statutory preference for less intrusive techniques. Id.

In this case, the affidavit in support of the May 7 wiretap order explained how numerous normal investigative procedures had failed, particularly how the use of various informants were unsuccessful in obtaining meaningful evidence. The affidavit also set forth the difficulties that were encountered in investigating Pirtle's drug activities and the substantial risks involved. In our view, the affidavit set forth sufficient facts to warrant the issuance of the May 7 wiretap order.

With regard to the June 11 wiretap order, the affidavit in support of the wiretap order explained that normal investigative procedures were still unsuccessful and that the investigation continued to face difficulties and involved substantial risks. Moreover, the record discloses that, as of the date of the application, the government was aware of some, but not all, of Pirtle's sources of crack. Finally, the government had not yet determined the identity of all the participants on the distribution side of Pirtle's organization. Under these circumstances, the issuance of the June 11 wiretap order was eminently reasonable.

Pirtle next claims that the district court violated his Sixth Amendment rights when it sentenced him to a mandatory term of life imprisonment under 21 U.S.C. § 841(b)(1)(A) based on two prior felony drug convictions that were not alleged in the indictment. A person that commits a 21 U.S.C. § 841(a)(1) violation is subject to a mandatory life sentence if they committed the instant § 841(a)(1) violation "after two or more prior convictions for a felony drug offense have become final." Id. § 841(b)(1)(A). The term "felony drug offense" means "an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country that prohibits or restricts conduct relating to narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances." Id. § 802(44).

A district court may enhance a sentence based on the "'fact of a prior conviction,'" United States v. Thompson, 421 F.3d 278, 282 (4th Cir. 2005), regardless of whether it was admitted to by the defendant or found by a jury so long as the facts necessary to support the enhancement "inhere in the fact of conviction" rather than being "extraneous to it," id. at 283.  Facts necessary to support a sentencing enhancement inhere in the fact of conviction rather than being extraneous to it so long as they come from "the charging document, the terms of a plea agreement, the plea colloquy, the statutory definition, or any explicit finding of the trial judge to which the defendant assented to determine a disputed fact about a prior conviction." United States v. Collins, 412 F.3d 515, 521 (4th Cir. 2005).

Our review of the record discloses that the respective charging documents and certificates of disposition with respect to Pirtle's prior drug felony convictions provided the district court an adequate basis to conclude that Pirtle had two prior convictions for felony drug offenses.  The first conviction (involving conduct committed in May 1996 for which he was arrested that same month) was for "CRIMINAL POSSESSION" of "cocaine" in the "5th DEGREE." (J.A. 756).  The second conviction (involving conduct committed in September 1996 for which he was arrested in October 1996) was for the "CRIMINAL SALE" of "cocaine" in the "3rd DEGREE."  (J.A. 762). Both of these offense are felonies under New York law.  See N.Y.

Penal Law § 220.39 ("Criminal sale of a controlled substance in the third degree is a class B felony."); N.Y. Penal Law § 220.06 ("Criminal possession of a controlled substance in the fifth degree is a class D felony."); cf. United States v. Brown, 937 F.2d 68, 69-70 (2d Cir. 1991) (holding that a state drug offense that was a felony under New Jersey common law was a felony drug offense for purposes of § 841(b)(1)(B)).  Accordingly, Pirtle's prior drug felony convictions required the court to sentence Pirtle to life imprisonment.

Pirtle also attacks Special Agent David Shields' testimony at trial regarding the meaning of statements made by Pirtle and several coconspirators during two calls intercepted over the wiretap on May 9 and June 13, 2003.  We find that any error here is harmless beyond a reasonable doubt.

Agent Shields testified about the meaning of statements during two calls and his testimony was consistent with the testimony of one of Pirtle's coconspirators who offered a similar interpretation of the calls.  Thus, Agent Shields' testimony was largely cumulative to evidence already before the jury.  Moreover, these calls only represented two of the seventeen calls played during the trial.  Finally, the evidence of guilt presented by the government was nothing short of overwhelming.  In short, the admission of Agent Shields' testimony played no role in the outcome of the trial.

Finally, Pirtle contends that the district court erred when it declined to define the term "reasonable doubt" after he requested such an instruction. We review the denial of a proposed jury instruction for an abuse of discretion. See United States v. Seidman, 156 F.3d 542, 551 (4th Cir. 1998).

We have consistently expressed disapproval of attempts by courts to define reasonable doubt. See, e.g., United States v. Najjar, 300 F.3d 466, 486 (4th Cir. 2002); United States v. Oriakhi, 57 F.3d 1290, 1300 (4th Cir. 1995). Moreover, we have held that a court should not attempt to define reasonable doubt absent a specific jury request. Oriakhi, 57 F.3d at 1300. In this case, there is no indication that the jury asked the district court to define reasonable doubt. Therefore, the court did not abuse its discretion when it declined to give Pirtle's requested reasonable doubt instruction.

For the reasons stated herein, we affirm Pirtle's conviction and sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED