**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 11-4438**

---

UNITED STATES OF AMERICA,

                    Plaintiff - Appellee,

          v.

ADDARIUS ABEL MARTINEZ,

                    Defendant - Appellant.

---

**No. 11-4564**

---

UNITED STATES OF AMERICA,

                    Plaintiff - Appellee,

          v.

AARON TYLER SOMERVILLE,

                    Defendant - Appellant.

---

**No. 11-5052**

---

UNITED STATES OF AMERICA,

                    Plaintiff - Appellee,

          v.

RAYMOND GARFIELD BUTLER,

        Defendant - Appellant.

———————————

Appeals from the United States District Court for the District of Maryland, at Baltimore. J. Frederick Motz, Senior District Judge. (1:08-cr-00442-JFM-2; 1:08-cr-00442-JFM-1; 1:08-cr-00442-JFM-4)

———————————

Submitted: July 20, 2012        Decided: September 7, 2012

———————————

Before TRAXLER, Chief Judge, and SHEDD and DUNCAN, Circuit Judges.

———————————

Affirmed by unpublished per curiam opinion.

———————————

Nicholas J. Vitek, VITEK LAW LLC, Baltimore, Maryland, for Appellant Addarius Abel Martinez; Michael Lawlor, LAWLOR & ENGLERT, LLC, Greenbelt, Maryland, for Appellant Aaron Tyler Somerville; Gerald C. Ruter, LAW OFFICE OF GERALD C. RUTER, PC, Rosedale, Maryland, for Appellant Raymond Garfield Butler. Rod J. Rosenstein, United States Attorney, Christopher J. Romano, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.

———————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Addarius Martinez, Aaron Somerville, and Raymond Butler ("Appellants") appeal their drug conspiracy convictions. Finding no error, we affirm.

I.

In 2004, members of the Cecil County Maryland Drug Task Force (CCDTF), the Kent County Maryland Drug Task Force, and the Baltimore/Washington High Intensity Drug Trafficking Area (HIDTA) began investigating a drug distribution organization led by Somerville, who resided in the Cecilton area of Cecil County, Maryland, and Martinez, who resided in Chestertown, Kent County, Maryland. The organization sold primarily cocaine and cocaine base. Between August 2006 and April 2008, CCDTF utilized confidential informants to make several controlled purchases from Somerville in Cecil County.

Based on information investigators had gathered, on June 2, 2008, the Cecil County State's Attorney applied to Cecil County Circuit Judge O. Robert Lidums for authorization to intercept calls over Somerville's cellular telephone. Judge Lidums approved the request and issued an order authorizing the wiretap. In so doing, he determined that there was probable cause to believe that Somerville and others were violating and

were about to violate Maryland's controlled dangerous substance laws.

The resulting interception of Somerville's calls yielded significant additional evidence of Martinez's involvement in Somerville's organization. For example, in a June 6, 2008, call to Javon McClinton, who was an identified drug associate of Somerville and Martinez, Somerville stated that he could not get Martinez to answer the phone and then instructed McClinton to "tell him do we got the other software together?" J.A. 202 (internal quotation marks omitted). When McClinton advised Somerville that "he got them in," Somerville then advised McClinton, "I'm coming to get the other thing of software . . . I'll be right there." J.A. 202 (internal quotation marks omitted). Three minutes later, Somerville received a call from Martinez in which Martinez told Somerville, "Jay told me, say about the other half, like when you come back, I can give you a little bit more because I didn't even get that much . . . . I'ma sell all this out so I can get, go ahead and get some more." J.A. 203 (internal quotation marks omitted). He then advised Somerville, "[W]e won't add until you have no more of that s**t." J.A. 203 (internal quotation marks omitted). From their experience, the investigators recognized that "software" referred to powder cocaine, and these conversations confirmed to them that Martinez was "frequently supplying cocaine to

4

Somerville for him to use in his drug distribution network." J.A. 203.

The wiretap also provided evidence of Butler's role as a supplier to Somerville's organization. In a June 12, 2008, call, Somerville asked Butler about drug prices. J.A. 203. Butler indicated that he would attempt to obtain six to eight kilograms of cocaine when he met with his suppliers the next day, realizing that Somerville and several others were interested in buying them.

Some of the intercepted calls also indicated that Butler was distributing drugs to customers in Cecil County other than Somerville and that he had plans to continue. For example, in one call Butler had admitted conducting drug transactions on the night of June 12, 2008, in the Cecil County town of North East. In this same call, Butler relayed that he and Martinez had been discussing that several Cecil County towns were "wide open," meaning that they lacked mid-level dealers. J.A. 204 (internal quotation marks omitted). In a call made on June 20, 2008, a customer told Butler that she had heard he had heroin and cocaine, prompting him to tell her that he would head toward North East, where she was located. (Detectives observed a meeting in North East later that night between the two.) In another call, Butler and Somerville discussed a Cecil County location that Butler had previously indicated he was in the

5

process of setting up as a location to distribute drugs. And, in another conversation concerning the market for selling cocaine in Maryland, Somerville asked Butler to look into the Cecil County community of Elkton, asserting that there were many cocaine customers that could use a supplier of Butler's magnitude.

Because of information developed from the wiretap on Somerville's phone, on June 16, 2008, detectives applied to Judge Lidums for authorization to intercept calls to and from Martinez's cellular telephones, and on June 19, 2008, they applied for authorization from Judge Lidums to intercept calls to and from Butler's cellular telephone. Again, Judge Lidums determined there was probable cause to believe that Somerville and others, including Martinez and Butler, were then committing and about to commit violations of the controlled dangerous substance laws of Maryland, and that the offenses were occurring in Cecil County, Maryland.[1]

On September 16, 2008, a federal grand jury returned a two-count indictment. Count One charged that from in or about June 2008 through in or about July 2008 Somerville, Martinez, and

---

[1] As a result of intercepting Butler's calls, members of the CCDTF learned that Butler had an additional cell phone that he used in the drug conspiracy. As a result, they applied for and were granted authorization to intercept calls over that line as well.

McClinton conspired with each other and others to distribute and possess with intent to distribute five grams or more of cocaine base and 500 grams or more of cocaine hydrochloride, in violation of 21 U.S.C.A. § 846 (West 1999). Count Two charged that on or about July 15, 2008, Martinez and McClinton possessed with intent to distribute a quantity of a mixture or substance containing cocaine hydrochloride, in violation of 21 U.S.C.A. § 841(a)(1) (West 1999). A superseding indictment later named Butler as an additional defendant in Count One.

Appellants each moved unsuccessfully to suppress the wiretap evidence.[2] The district court denied their motions, however, and they each pled guilty to Count One pursuant to written plea agreements that reserved the right to appeal the denial of their motions to suppress. Martinez, Somerville, and Butler were sentenced to prison terms of 92 months, 102 months, and 156 months respectively.

II.

Appellants first argue that the district court erred in not granting their motions to suppress on the basis that the various

---

[2] McClinton pled guilty to Count One of the superseding indictment and is not involved in this appeal.

7

wiretap applications did not sufficiently demonstrate the need for the wiretaps. We disagree.

Electronic eavesdropping by law enforcement is governed by the federal wiretap statute. See 18 U.S.C.A. § 2510 et seq. (West 2000 & Supp. 2012); United States v. Oriakhi, 57 F.3d 1290, 1298 (4th Cir. 1995). To obtain authorization for a wiretap under that statute, the government must establish, in addition to probable cause, that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C.A. § 2518(3)(c). This burden "is not great, and the adequacy of such a showing is to be tested in a practical and commonsense fashion that does not hamper unduly the investigative powers of law enforcement agents." United States v. Smith, 31 F.3d 1294, 1297 (4th Cir. 1994) (citation and internal quotation marks omitted). The government "need only present specific factual information sufficient to establish that it has encountered difficulties in penetrating the criminal enterprise or in gathering evidence—to the point where wiretapping becomes reasonable." Id. at 1298 (alterations, citation, and internal quotation marks omitted).

We review the factual findings underlying a district court's ruling on a motion to suppress for clear error and review its legal conclusions de novo. See United States v.

8

<u>Wilson</u>, 484 F.3d 267, 280 (4th Cir. 2007). We review for abuse of discretion an authorizing court's determination that a wiretap was necessary. <u>See</u> <u>id.</u>

We find no such abuse here. Each wiretap application contains an affidavit setting forth in great detail the investigative techniques that had been employed to that point. They included utilizing (or attempting to utilize) confidential informants, undercover purchases, stationary and mobile surveillance, financial investigation, dialed number recorders, telephone subscriber information, search and seizure warrants, abandoned trash, and records checks. The affiants explained that although these methods yielded significant evidence, they were not sufficient to achieve their goals, such as successfully apprehending and prosecuting local coconspirators and then-as-yet unidentified individuals higher up in the distribution scheme, identifying the location of stash houses and obtaining the evidence necessary to seize drug proceeds.

Appellants contend that after being granted authorization to intercept and record Somerville's calls, investigators took relatively few additional investigatory steps with regard to Martinez and Butler. However, the question of whether particular investigatory steps were taken before or after officers began listening to and recording Somerville's calls is of little importance. As Appellants acknowledge, each

application must be judged on its own merits. And, to the extent Appellants maintain that Judge Lidums's authorization of the Somerville wiretap eliminated the need for the subsequent wiretaps, that contention is adequately refuted by the applicable affidavits.

Appellants next maintain that the district court erred in refusing to suppress the evidence generated by the Martinez and Butler wiretaps because the affidavits in support of those orders provided no allegations of a crime being committed in Cecil County. Because this claim is raised for the first time on appeal, our review is for plain error. See United States v. Olano, 507 U.S. 725, 731-32 (1993). Nevertheless, we find no error, plain or otherwise.

Under Maryland law, an applicant seeking a wiretap order must "apply to a judge of competent jurisdiction." Md. Code Ann., Cts. & Jud. Proc. § 10-406. In this context, "'[j]udge of competent jurisdiction' means a judge of any circuit court within the State having jurisdiction over the offense under investigation." Md. Code Ann., Cts. & Jud. Proc. § 10-401(8). In Maryland, a circuit court judge has jurisdiction only over criminal offenses occurring within the county in which the circuit court sits. See Md. Code Ann., Cts. & Jud. Proc. § 1-501 ("Each [circuit court] has full common-law and equity powers

10

and jurisdiction in all civil and <u>criminal cases within its county</u>." (emphasis added)).

We conclude that the affidavits satisfactorily alleged that Martinez and Butler were engaged in drug crimes in Cecil County. The affidavits established that the officers were investigating the drug distribution organization in which Somerville distributed narcotics in both Cecil and Kent Counties. Referencing the earlier-discussed phone conversations and other evidence, the affidavits contained facts demonstrating probable cause that Martinez was conspiring with him in this organization and supplying some of the drugs to be distributed. <u>See</u> <u>United States v. Reid</u>, 523 F.3d 310, 317 (4th Cir. 2008) (explaining that a drug purchase combined with "evidence of continuing relationships and repeated transactions can support the finding that there was a conspiracy, especially when coupled with substantial quantities of drugs"). They also contained facts demonstrating probable cause that Butler was conducting drug transactions in Cecil County and that he planned to continue to do so.

III.

In sum, finding no error, we affirm Appellants' convictions. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials

11

before the court and argument would not aid the decisional process.

AFFIRMED