**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 15-4545**

———————

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

    v.

BARAKA ZUBERI CHAUKA,

        Defendant - Appellant.

———————

Appeal from the United States District Court for the District of Maryland, at Baltimore. Ellen L. Hollander, District Judge. (1:14-cr-00414-ELH-2)

———————

Submitted: April 21, 2016          Decided: May 4, 2016

———————

Before GREGORY, WYNN, and FLOYD, Circuit Judges.

———————

Affirmed by unpublished per curiam opinion.

———————

Jonathan P. Van Hoven, Baltimore, Maryland, for Appellant. Rod J. Rosenstein, United States Attorney, Jason D. Medinger, Assistant United States Attorney, Baltimore, Maryland, for Appellee.

———————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Baraka Zuberi Chauka appeals the district court's denial of his motion to suppress evidence derived from several wiretaps, and his subsequent conviction for conspiracy to distribute cocaine, in violation of 21 U.S.C. § 846 (2012), and possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841 (2012).

On appeal, Chauka argues that the wiretap applications were defective and the district court erred in failing to suppress evidence gathered as a result of those wiretaps. Chauka contends that: (1) officers misrepresented the need for a wiretap because traditional investigative techniques were successful in this case; (2) officers did not provide sufficient justification to extend the wiretaps to Chauka; and (3) the officers were not acting in good faith reliance on the wiretap orders due to misrepresentations in the affidavits.

We review de novo legal conclusions from a district court's denial of a motion to suppress evidence, and review the court's factual findings for clear error. United States v. Wilson, 484 F.3d 267, 280 (4th Cir. 2007). Determinations of necessity for a wiretap are reviewed for abuse of discretion. Id. Wiretap orders must conform to both state and federal law, United States v. Smith, 31 F.3d 1294, 1297 (4th Cir. 1994), but the

relevant federal and Maryland statutes are substantially similar. <u>Davis v. State</u>, 43 A.3d 1044, 1046 (Md. 2012).

Federal and Maryland wiretap statutes require that police officers exhaust ordinary investigative techniques before applying for a wiretap. <u>Compare</u> Md. Code, Cts. & Jud. Proc. §§ 10-408(a)(1)(iii), (c)(1)(iii) (Lexis Nexis 2013) <u>with</u> 18 U.S.C. § 2518(1)(c), (3)(c) (2012). This exhaustion requirement is "designed to ensure that the relatively intrusive device of wiretapping is [not] 'routinely employed as the initial step in a criminal investigation.'" <u>Smith</u>, 31 F.3d at 1297 (quoting <u>United States v. Giordano</u>, 416 U.S. 505, 515 (1974)). "[H]owever, the burden . . . impose[d] upon the government to show the inadequacy of normal investigative techniques is not great, and the adequacy of such a showing is to be tested in a practical and commonsense fashion." <u>Id.</u> (internal quotation marks omitted). The Government is not required to demonstrate "that it has exhausted <u>all</u> possible alternatives to wiretapping," but instead "need only present specific factual information sufficient to establish that it has encountered difficulties in penetrating the criminal enterprise or in gathering evidence — to the point where wiretapping becomes reasonable." <u>Id.</u> at 1297-98 (ellipsis, brackets, citation, and internal quotation marks omitted).

We conclude that the district court correctly found that the affidavits satisfied state and federal exhaustion requirements.* The affidavits noted that several investigative techniques were attempted but failed to reveal the full scope of Chauka's organization; these techniques included physical surveillance, informants, and analysis of telephone toll records. Additionally, the affidavits provided particularized reasons why numerous other techniques were unlikely to achieve all the goals of the investigation. These explanations were sufficient to establish necessity for the wiretaps. Wilson, 484 F.3d at 281; Smith, 31 F.3d at 1299; United States v. Leavis, 853 F.2d 215, 221 (4th Cir. 1988).

We also conclude that the affidavits were not contradicted by the officers' actions. First, Chauka argues that the officers contradicted themselves by stating that physical surveillance would be ineffective, while simultaneously employing "extensive physical surveillance with numerous mobile units." Although the officers did conduct surveillance on Reed and Chauka, the surveillance was often frustrated by the counter-surveillance techniques employed by both men. Surveillance was made more difficult by the rural location where

---

* We assume, without deciding, that Chauka has standing to challenge the wiretaps on Lamont Reed's phone lines.

4

Chauka operated, making it "nearly impossible" to enter the area without being seen.

As the district court noted, much of the successful surveillance did not occur in spite of, or alongside the wiretaps, but as a direct result of the wiretaps. Officers learned where Chauka was traveling and why, and were able to surveil him away from his rural area of operation due to the information gleaned in the wiretaps. Chauka's arrest was facilitated not by physical surveillance, but by wiretaps that revealed Chauka was purchasing cocaine.

Chauka points out that the affidavits attested that GPS tracking would likely be ineffective, but officers simultaneously applied for a warrant to install a GPS device. While the use of tracking devices would assist the police in tracking Chauka, however, they could not track all of his activities because he had access to multiple vehicles. The use of GPS would assist police in determining where Chauka (or rather, the vehicle primarily used by Chauka) was at any given moment, but could not reveal what Chauka was doing at those locations. The officers never asserted that the use of a GPS device was impossible, merely that its use was "reasonably likely to fail . . . to achieve the full goals and objectives of th[e] investigation."

Finally, Chauka argues that the search warrant executed on his home demonstrates that the wiretap affidavits were inconsistent with the officers' actions. The affidavits asserted that search warrants would "not be helpful at this stage" because the "conspiracy ha[d] not been fully defined" and the execution of search warrants would alert coconspirators while only temporarily disrupting Chauka's operation. However, the application for a search warrant on Chauka's residence, and the concomitant disclosure of the surveillance, occurred after police arrested Chauka for possession of more than 125 grams of cocaine. At that time, officers had been investigating and conducting surveillance on Chauka for nearly 2 months, had been listening to his phone calls through wiretaps for more than 1 month, and had been tracking him through the use of GPS for 11 days. This lengthy monitoring materially changed the circumstances of the investigation. Thus, the officers' later use of a search warrant does not contradict their previous assertions.

Because we conclude that the district court correctly found that the wiretap authorizations were properly issued, we need not address Chauka's argument that the good faith exception does not apply. Accordingly, we affirm the district court's judgment. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials

before this court and argument would not aid the decisional process.

AFFIRMED