**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Christopher ROSEBORO, Defendant–Appellant.**

**UNITED STATES of America, Plaintiff–Appellee,**

v.

**James Edward KEY, Defendant– Appellant.**

**Nos. 94–5902, 94–5960.**

United States Court of Appeals, Fourth Circuit.

Argued Feb. 2, 1996.

Decided June 20, 1996.

**ARGUED:** Brian Joseph Murphy, Baltimore, Maryland, for Appellant Key; Arcangelo Michael Tuminelli, Baltimore, Maryland, for Appellant Roseboro. Carmina Szunyog Hughes, Assistant United States Attorney, Baltimore, Maryland, for Appellee. **ON BRIEF:** Lynne A. Battaglia, United States Attorney, Joseph H. Young, Assistant United States Attorney, Baltimore, Maryland, for Appellee.

Before NIEMEYER and LUTTIG, Circuit Judges, and DOUMAR, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

Affirmed by published opinion. Judge NIEMEYER wrote the opinion, in which Judge LUTTIG and Senior Judge DOUMAR joined.

## OPINION

NIEMEYER, Circuit Judge:

Christopher Roseboro and James Edward Key were charged in a ten-count indictment with conspiring to rob three banks, in violation of 18 U.S.C. § 371; with robbing three banks, in violation of 18 U.S.C. §§ 2113 & 2; and with using firearms in the commission of those crimes, in violation of 18 U.S.C. § 924(c). A jury acquitted them of the firearms count relating to the first bank robbery and of the conspiracy count, but convicted them of the remaining eight counts. The district court sentenced each defendant to 600 months imprisonment—300 months for the bank robberies, 60 months for the first firearms violation, and 240 months for the second.

The principal argument that Roseboro and Key raise on appeal is that the Jencks Act, 18 U.S.C. § 3500, required the court to conduct an *in camera* review of an "FBI 302 Report" prepared in connection with the FBI's interview of a government witness and to order its production after direct examination of the witness. The defendants also contend that a pretrial search of Key's mother's house was without her consent and that the district court abused its discretion in refusing to grant a severance under Federal Rule of Criminal Procedure 14.

Because the defendants failed to establish that the FBI 302 Report was a "statement" within the meaning of the Jencks Act, we conclude that the district court was not required to order its production. We also reject the defendants' remaining two arguments. Accordingly, we affirm.

I

At trial, the government called Taryn Lichtel, a teller at the Provident Bank, who testified to what she saw during one of the bank robberies. On cross examination, Roseboro's counsel questioned Ms. Lichtel about an interview that she had given to FBI Special Agent Barry after the robbery. Ms. Lichtel testified that the interview had lasted approximately 20 minutes and that Agent Barry had taken notes. She further testified that Agent Barry would obtain her answers to questions, repeat the answers to make sure he "had it right," and write them down. Although Agent Barry did not tape or otherwise record the interview, the government

acknowledged that he typed a one-and-one-half page Form 302 Report from his handwritten notes of the 20–minute interview.

On the basis of this foundation, Roseboro made a request under the Jencks Act for a copy of the FBI 302 Report. The government refused on the ground that the report was not a "statement" within the meaning of the Act. Without conducting an *in camera* review of the document, the district court declined to require its production, finding, "[A]ll I can do is go by the law, and I just don't think this is a Jencks Act statement."

■ We review the district court's finding for clear error. *See United States v. Boyd,* 53 F.3d 631, 634 (4th Cir.), *cert. denied,* — U.S. ——, 116 S.Ct. 322, 133 L.Ed.2d 223 (1995); *United States v. Smith,* 31 F.3d 1294, 1301 (4th Cir.1994), *cert. denied,* — U.S. ——, 115 S.Ct. 1170, 130 L.Ed.2d 1124 (1995).

■ In response to the Supreme Court's decision in *Jencks v. United States,* 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957) (holding that criminal defendants are entitled to obtain, for impeachment purposes, statements made by government witnesses to government agents that relate to the subject matter of the witnesses' direct testimony), Congress enacted the Jencks Act, which codifies and, in some respects, regulates the Supreme Court's decision. *See Palermo v. United States,* 360 U.S. 343, 346–48, 79 S.Ct. 1217, 1221–23, 3 L.Ed.2d 1287 (1959). In adopting the Act, Congress intended to provide a defendant only a limited intrusion into government files to permit the defendant to obtain statements for impeachment purposes and to shift from the government to the district court the duty of determining whether a document is to be produced. *Id.* at 349–50, 79 S.Ct. at 1223–24.

At its core, the Jencks Act provides that after a witness called by the government has testified on direct examination, the court must grant a motion to produce "any statement . . . of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified." 18 U.S.C. § 3500(b). The Act defines "statement" to include a written statement "signed or otherwise adopted or approved" by the witness as well as a "recording" of a witness' oral statement that is a "substantially verbatim recital." 18 U.S.C. § 3500(e).

■ In *Palermo,* the Supreme Court explained that only witness statements "which could properly be called the witness' own words" and "reflect fully and without distortion what had been said to the government agent" are producible under the Jencks Act. 360 U.S. at 352, 79 S.Ct. at 1224. While a statement need not have been written or signed by the witness, if the statement is not the witness' actual words, it must in some way have been adopted or approved by the witness to qualify as Jencks material. Thus, when a government agent interviews a witness and takes contemporaneous notes of the witness' responses, the notes do not become the witness' statement—despite the agent's best efforts to be accurate—if the agent "does not read back, or the witness does not read, what the [agent] has written." *Goldberg v. United States,* 425 U.S. 94, 110–11 n. 19, 96 S.Ct. 1338, 1348 n. 19, 47 L.Ed.2d 603 (1976). And a government agent's interview notes that "merely select[ ] portions, albeit accurately, from a lengthy oral recital" do not satisfy the Jencks Act's requirement of a "substantially verbatim recital." *Palermo,* 360 U.S. at 352, 79 S.Ct. at 1224–25.

■ Because a court cannot permit a defendant to inspect government documents thought to qualify as statements in order to argue whether it should be allowed to see them, *Palermo,* 360 U.S. at 354, 79 S.Ct. at 1225–26, the Jencks Act vests trial judges with the affirmative duty of administering the Act by deciding whether government documents relating to witness testimony are to be safeguarded or produced, *see Campbell v. United States,* 365 U.S. 85, 95, 81 S.Ct. 421, 426–27, 5 L.Ed.2d 428 (1961).

■ To invoke a court's duty under the Act, a defendant must, after the direct testimony of a government witness, first make a sufficiently specific request and provide some indication that the witness gave a pretrial statement to a government agent generally related to the witness' direct testimony. The defendant's showing need not be great, but it

must be more than a mere automatic demand for government witness' statements. *See Boyd,* 53 F.3d at 634. An inadequate foundation may be grounds alone on which the court can properly deny further inquiry. *See Smith,* 31 F.3d at 1302.

■ After the defendant provides a foundation sufficient to invoke the court's duty under the Act, the court may review the document *in camera* and consider evidence extrinsic to the document to determine whether it is a "statement." *See Palermo,* 360 U.S. at 354–55, 79 S.Ct. at 1225–26. While there is no *per se* requirement that a district court conduct an *in camera* review of government documents to determine whether they contain a Jencks Act statement, we have cautioned that when a Jencks Act issue has been fairly raised, the court's inquiry "normally should[ ] begin with *in camera* inspection of the materials in question." *Smith,* 31 F.3d at 1302.

In the case before us, Roseboro and Key argue that the district court erred in failing to conduct an *in camera* inspection of the FBI 302 Report concerning the interview with Lichtel. While this appeal might not have been necessary had the district court inspected that report, we agree with the court that the defendants' foundation was inadequate to require further inquiry.

■ The defendants established that Agent Barry interviewed Lichtel, took contemporaneous notes, and repeated Lichtel's answers to be sure he "had it right." There is no evidence, however, that Agent Barry read his notes back to Lichtel or that Lichtel otherwise adopted what Agent Barry had written. Nor is there any indication that Agent Barry made or was attempting to make a verbatim record of the interview. To the contrary, although the Lichtel interview lasted 20 minutes, the Form 302 was only one and one-half pages long. While Agent Barry was undoubtedly trying to understand accurately what Lichtel witnessed, we do not believe that his report could "properly be called [Lichtel's] own words." *Palermo,* 360 U.S. at 352, 79 S.Ct. at 1224. Accordingly, we conclude that the district court's finding that the FBI 302 Report was not a Jencks Act statement is not clearly erroneous.

## II

The defendant Key contends that the search of Laustine Coles' house on January 19, 1994, was without her consent. Laustine Coles is Key's mother, and the search of Key's bedroom at Coles' house yielded a photograph of Roseboro and a pair of gloves that Key had worn during one of the bank robberies.

Special Agent Betts testified that on January 19, 1994, he went to Coles' house and obtained Coles' written consent to search her house. He further explained that while sitting on the sofa in the Coles' living room, he read Coles the consent form to ensure she understood it and that she thereafter signed it. According to Agent Betts, the transaction was cordial.

Coles' testimony about the events of that day was somewhat confused with an earlier search of her house conducted on January 14, 1994, pursuant to a warrant. But she conceded that on January 19 she let Agent Betts into her house and that he presented a paper for her to sign. While agreeing that she signed the paper, Coles testified that she did not know what it was. She did acknowledge, however, that Agent Betts told her, while sitting in her living room, that "he needed [her] consent to be able to search that night." And Coles admitted that she then "signed that piece of paper" in her dining room.

Crediting the testimony of Agent Betts, the district court found the search of Coles' house consensual and refused to suppress the fruits of that search. In view of the evidence presented, we conclude that the district court's finding is not clearly erroneous.

## III

■ Finally, Roseboro and Key contend that the district court erred in refusing to grant their motions for a severance under Federal Rule of Criminal Procedure 14. The defendants sought separate trials on the conspiracy count and on each of the bank robbery counts. They argue that prosecuting all three bank robberies in one trial unfairly prejudiced them "because of the transference

of guilt or spillover of evidence from one discrete transaction to another." Our review of the district court's order denying the defendants' severance motions is for abuse of discretion. *See United States v. Santoni,* 585 F.2d 667, 674 (4th Cir.1978), *cert. denied,* 440 U.S. 910, 99 S.Ct. 1221, 59 L.Ed.2d 459 (1979).

While there was evidence of differences in each of the bank robberies, there was also evidence of similarities and even evidence suggesting a common scheme. Moreover, the grand jury charged defendants with conspiring to rob all three banks. Under these circumstances we conclude that the district court did not abuse its discretion in refusing to order separate trials. *See United States v. Williams,* 10 F.3d 1070, 1079–80 (4th Cir. 1993), *cert. denied,* — U.S. ——, 115 S.Ct. 313, 130 L.Ed.2d 276 (1994).

For the foregoing reasons, we affirm the defendants' convictions.

*AFFIRMED.*