**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                          No. 97-4083

FREDDIE JONES, JR.,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                          No. 97-4084

MILTON LEWIS, a/k/a Flash,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                          No. 97-4107

TORRANCE JONES, a/k/a Tube,
Defendant-Appellant.

Appeals from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Terrence W. Boyle, District Judge.
(CR-96-79-BO)

Argued: May 7, 1998

Decided: November 2, 1998

Before WIDENER, NIEMEYER, and LUTTIG, Circuit Judges.

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Terry Goodwin Harn, Chapel Hill, North Carolina; Bridgett Britt Aguirre, AGUIRRE LAW OFFICE, Fuquay-Varina, North Carolina, for Appellants. Anne Margaret Hayes, Assistant United States Attorney, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Gordon M. Widenhouse, FEDERAL PUBLIC DEFENDER'S OFFICE, Raleigh, North Carolina, for Appellant Lewis. Janice McKenzie Cole, United States Attorney, Raleigh, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

This case arises from the prosecution of several defendants for their participation in drug trafficking. In this consolidated appeal, Torrance Jones, Freddie Jones, Jr.,**1** and Milton Lewis appeal their convictions and sentences on various grounds. Finding no reversible error, we affirm.

I.

On April 23, 1996, a federal grand jury returned an indictment against nine defendants, including appellants Torrance and Freddie Jones, and Lewis. Count One of the indictment charged each of the

_____

**1** The indictment spells Freddie Jones' name Freddy, but other documents spell the name Freddie. We use Freddie because our clerk advises it will be used in the style of the case in the filed opinion.

2

three defendants with conspiracy to possess with intent to distribute cocaine and cocaine base in violation of 21 U.S.C.§§ 841(a)(1) and 846. Counts Seven and Eight also charged Freddy and Torrance with possession with intent to distribute cocaine and crack cocaine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C.§ 2. Following a trial, the jury found the defendants guilty as charged. Following sentencing, each defendant filed a timely notice of appeal. Jurisdiction in this court is proper under 28 U.S.C. § 1291.

All three defendants contend that their convictions should be overturned based on the prosecution's failure to turn over the criminal histories and witness statements of government witnesses. Next, Torrance claims that the district court gave an erroneous and prejudicial supplemental jury instruction regarding constructive possession. Lewis challenges the district court's supplemental jury instruction regarding the formation of a conspiracy with a government agent. Lewis also asserts that the district court erred in denying his motion for severance. Next, Torrance argues that the district court's conduct deprived him of a fair trial and challenges his sentence on the grounds of the amount of drugs attributed to him and the enhancement for his role in the offense. Finally, all defendants challenge the district court's sentencing based on cocaine and crack cocaine following the jury's return of a general verdict of guilty. We address seriatim defendants' challenges to their convictions and sentences.

II.

A.

We first address the issue of the prosecution's alleged failure to disclose certain information favorable to the defense as required by Brady v. Maryland, 373 U.S. 83 (1963). Under Brady and its progeny, the failure to disclose "evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment." Brady, 373 U.S. at 87; see Kyles v. Whitney, 514 U.S. 419, 431 (1995); Hoke v. Netherland, 92 F.3d 1350, 1356 (4th Cir.), cert. denied, 117 S. Ct. 630 (1996). Favorable evidence includes evidence that could be used to impeach government witnesses. United States v. Ellis, 121 F.3d 908, 914 (4th Cir.), cert. denied, 118 S. Ct. 738 (1998). Evidence is considered material "only where there exists

3

a `reasonable probability' that had the evidence been disclosed the result of the trial would have been different." Ellis, 121 F.3d at 914 (quoting Wood v. Bartholomew, 516 U.S. 1, 5 (1995)). A "reasonable probability" of a different result is established if the government's failure to disclose evidence "undermines confidence in the outcome of the trial." Ellis, 121 F.3d at 914 (quoting Kyles, 514 U.S. at 434).

In this case, defendants argue that the prosecution failed to disclose the prior criminal histories of two government witnesses, Michael Rubel and Richard Mann. In particular, defendants point to Rubel and Mann's participation in a Florida incident involving a stolen firearm. Defendants assert that the prosecution's failure to turn over this prior criminal history of Rubel and Mann hampered their cross-examination of Rubel and Mann. During oral argument before this court, defense counsel conceded that he had received the "rap sheet" of Rubel during discovery, but stated that the rap sheet did not contain information regarding the Florida incident.**2** However, trial counsel for Lewis and Torrance demonstrated their knowledge of the firearm incident during cross-examination of these two witnesses. For example, counsel asked Rubel whether he had been convicted of larceny of a firearm in Florida in June of 1995. Rubel responded affirmatively and stated that he was currently on probation for that offense. Defense counsel also asked Mann about the Florida firearm incident, and Mann admitted helping Rubel steal the gun. While arguing an evidentiary matter, counsel for Torrance again indicated her knowledge of Rubel's involvement in the Florida firearm incident. Based on this actual knowledge by defendants, we are of opinion that their Brady claim must fail. In order to establish a Brady violation, defendants must show that the government's failure to disclose certain materials undermined confidence in the outcome of the trial. Here, the record shows that defendants obtained and used the same information they contend the prosecution should have turned over. Thus, defendants

_____

**2** Defense counsel contends that the "rap sheet" did not contain any information about the Florida incident involving Rubel. The government responds that the Florida incident did not appear in the criminal history provided because the case resulted in a probation before judgment sentence such that there was no judgment on record. Defendants argue that the incident appeared in Florida records as a no contest plea with two years probation and thus should have been disclosed.

4

cannot meet the standards of Brady, and we affirm the judgment of the district court.**3**

B.

Defendants next claim that the district court erred in failing to make an in camera examination of a law enforcement agent's notes in order to determine whether the notes were required to be produced under the Jencks Act, 18 U.S.C. § 3500. At trial, defendants moved for production of notes taken by a law enforcement agent during an interview of government witness Richard Mann. Defendants claimed that the notes constituted "statements" under the Jencks Act. The government responded that there were no Jencks Act statements relating to Mann. Without conducting an in camera inquiry, the district court declined to require production of the notes. We review the district court's fact finding for clear error. United States v. Roseboro, 87 F.3d 642, 645 (4th Cir. 1996).

After a government witness has testified on direct examination, the government is required to turn over any "statement" of the witness in its possession that relates to the subject matter of the witness's testimony. 18 U.S.C. § 3500(b). In this context, a statement is defined to include "a written statement made by said witness and signed or otherwise adopted or approved by him" or a contemporaneous recording of a witness's oral statement that is a "substantially verbatim recital." 18 U.S.C. § 3500(e)(1), (2).

In the present case, Mann testified that an officer took notes during his interview and stated that the officer "might ask [Mann] to repeat [himself]" in order to ensure accuracy. However, there is no evidence in the record indicating that the notes were a "substantially verbatim recital" of Mann's oral statements or that Mann approved or adopted the notes as his own. Moreover, the district court's decision not to review the notes in camera is consistent with this court's recent decision in Roseboro, a case decided on similar facts. Roseboro, 87 F.3d

_____

**3** Because we conclude that the defendants actually possessed the information that is the subject of their Brady claim, albeit by independent investigation, we express no opinion as to whether the government had a Brady obligation to disclose such information.

5

at 646. While, as <u>Roseboro</u> concludes, a simple review of the notes by the district court would have avoided the problem, we conclude this was not reversible error.

C.

Defendants next challenge two supplemental jury instructions given by the district court in response to written questions from the jury. Defendants first argue that the district court erred in responding to the jury's questions without first consulting counsel. Although better practice is to hear counsel before giving a supplemental instruction, reversible error does not occur unless the defendant suffers some prejudice. <u>United States v. Polowichak</u>, 783 F.2d 410, 413-14 (4th Cir. 1986).

In examining a district court's response to a request for clarification from the jury, the issue is whether the court responded to the jury's inquiry "fairly and accurately without creating prejudice." <u>United States v. Smith</u>, 62 F.3d 641, 646 (4th Cir. 1995) (citing <u>United States v. United Medical and Surgical Supply Corp.</u>, 989 F.2d 1390, 1407 (4th Cir. 1993)). The decision to give a supplemental instruction and the specific words chosen are left to the discretion of the district court. <u>Smith</u>, 62 F.3d at 646 (citing <u>United States v. Horton</u>, 921 F.2d 540, 546 (4th Cir. 1990), <u>cert. denied</u>, 501 U.S. 1234 (1991)). Applying these standards, we consider the supplemental instructions given by the district court.

First, defendant Torrance challenges the district court's supplemental instruction on constructive possession. After starting deliberations, the jury stated: "[w]e need the definition again of possession."[4] The district court responded by providing definitions of actual possession, constructive possession, sole possession, and joint possession. Defendant objects to the district court's definition of "constructive possession" based on the court's statement that constructive possession is the right to exercise dominion and control. The defendants argue that it is the <u>power</u> to exercise dominion and control, rather than the <u>right</u>, which is involved. In relevant part, the district court stated:

_____
[4] Apparently possession had not been defined in the original jury instructions.

6

> Constructive possession means when you have the right to exercise control and dominion over something . . . And my glasses are in my constructive possession now because they're my glasses. And if I want them I can get them. Now, if I put my glasses back in my office and left them on the desk, they'd still be in my constructive possession because they're mine and I can get them when I want them. If I left them at home on my dresser they would still be in my constructive possession. I'm not there. Well, why are they in my possession? They're in my possession because they're mine and if I want them I can get them.

This court has stated that constructive possession may be established by showing that a defendant had the power to exercise dominion and control over an object. United States v. Burgos , 94 F.3d 849, 873 (4th Cir. 1996), cert. denied, 117 S. Ct. 1087 (1997). However, other courts have used the term "right" as a substitute for the word "power" in defining constructive possession. See, e.g., United States v. Brito, 136 F.3d 397, 409 (5th Cir. 1998); United States v. Gonzalez, 71 F.3d 819, 834 (11th Cir. 1996); United States v. Williams, 952 F.2d 418, 420 (D.C. Cir. 1991), cert. denied, 506 U.S. 850 (1992); United States v. Latham, 874 F.2d 852, 861 (1st Cir. 1989); United States v. Martorano, 709 F.2d 863, 866 (3d Cir.), cert. denied, 464 U.S. 993 (1983). We are of opinion that any distinction between power and right is only a play on words and is a distinction without a difference. No prejudice resulted, and accordingly, defendant's claim fails.

Next, Lewis challenges the district court's response to the jury's inquiry regarding the possibility of a conspiracy between Lewis and government agent Rubel. The initial jury charge included the following statement:

> [W]hen Mr. Rubel was arrested and then became a cooperating person, he then was not in a position to continue as a conspirator. So the things that he did after that wouldn't be the basis for him being a conspirator with someone else. But persons could be conspirators with each other, other than with him. And they certainly could be conspirators with him before the time that he became a cooperating defendant.

7

After deliberating for several hours, the jury asked the court the following question: "If Milton Lewis conspired to deal drugs with Mike Rubel on the day and night of Milton's arrest, does that make Milton guilty of conspiracy in accordance with the indictment? We may need an explanation of conspiracy in connection with Mike Rubel." The district court responded, in relevant part, as follows:

> Apparently the parenthetical charge that I gave you about Mr. Rubel was something that confused you rather than helped you. And I will put that into perspective now. The government's theory of the case and the evidence that it has offered has nothing to do with the day of the arrest specifically as proof of the conspiracy. The conspiracy is alleged to have taken place historically, meaning January 1995 through that date. The events of that date weren't the core events of the conspiracy. That was the conclusion and wrapping up of the case according to the government's evidence. And so if for a moment the defendant Lewis or the defendant Jones or the other defendant Jones conspired with another person to violate the drug trafficking laws, the crime is complete. That's the government's theory of the case. And all I was telling you was that Rubel, when he became a defendant, i.e. was arrested, was removed from voluntarily being involved in future criminal activity and then became a cooperating witness, as such he could not be a conspirator because he was not then engaged in a crime.

As noted above, the preferred practice would have been for the district court to hear counsel before responding to the jury's inquiry. Polowichak, 783 F.2d at 413-14. However, as noted, we can find reversible error only if the error is prejudicial.

Lewis argues that the district court erred in not providing a more direct answer to the jury's inquiry and asserts that "no" would have been a sufficient and more appropriate response. We are of opinion that the district court's supplemental instruction fairly and accurately responded to the jury's question by explaining that after Rubel began cooperating with the government, he could not be part of a conspiracy. See United States v. Hayes, 775 F.2d 1279, 1283 (4th Cir. 1985). Even if the response could have been more concise or direct, we can-

8

not say that the district court abused its discretion in selecting the exact wording of its instruction. Moreover, Lewis cannot establish any prejudice arising from the instruction because record evidence unrelated to Rubel supports his conspiracy conviction. Lewis's argument that the supplemental instruction "essentially directed a verdict against [him]" also lacks merit.

Because we do not conclude that the supplemental instruction was legally incorrect, we also reject defendant's claim that his conviction must be reversed because the jury's verdict may have relied on an invalid theory of law.[5]

D.

Lewis also contends that the district court erred in denying his motion to sever his case from the trial of Freddie and Torrance. However, we are unable to locate any such motion by Lewis in the record before us. Rather, the record reflects only a motion by Lewis to sever his case from the trial of six defendants other than defendants Freddie and Torrance.[6] Because Lewis was not tried with these six other defendants and apparently did not file a motion to sever his trial from the trials of Freddie and Torrance, his attempted appeal on this issue is wholly without merit.[7]

_____

[5] Although only Lewis challenges the supplemental instruction regarding a conspiracy with a government agent, all defendants claim that their convictions should be set aside because the jury's verdict may have relied on an invalid theory of law. We fail to see how this claim relates to defendants Torrance and Freddie and thus do not address this issue as to these two defendants.

[6] The docket sheet indicates the filing of "Supplemental Facts and MEMORANDUM of Law by Milton Lewis in support of[his May 28, 1996] motion to sever." However, there is nothing on the docket sheet indicating that Lewis filed any subsequent motions to sever his trial from that of Freddie and Torrance.

[7] Even if Lewis filed a motion to sever from Freddie and Torrance that for some reason has not appeared in the record before us, we would affirm the judgment of the district court. We review a district court's denial of a motion to sever for an abuse of discretion. United States v. McManus, 23 F.3d 878, 882 (4th Cir. 1994), cert. denied, 517 U.S. 1215

9

E.

Torrance also claims that various conduct and statements of the district court during the trial deprived him of due process and a fair trial by prejudicing the jury. Torrance first points to pretrial conduct of the district court, but the conduct cited relates to Freddie and thus is irrelevant to Torrance's claims. In addition, at least five of the incidents cited by Torrance occurred outside the presence of the jury. Another statement cited by defendant does not appear in the trial transcript.**8** The remaining incidents do not merit extended discussion. We have carefully reviewed the record regarding the incidents cited by Torrance and fail to see any prejudice to Torrance resulting from the district court's conduct. Defendant's claims of improper conduct by the district court are not supported by the record and thus are without merit.

F.

Torrance contends that the district court made two errors in calculating the applicable sentencing guideline range. First, Torrance challenges the quantity of drugs attributed to him in the district court's calculation of his base offense level. Next, Torrance argues that the district court improperly enhanced his sentence based on his role in the offense. For purposes of sentencing, the government must prove the quantity of drugs for which the defendant should be held accountable by a preponderance of the evidence. United States v. Estrada, 42 F.3d 228, 231 (4th Cir. 1994). In proving the quantity of drugs, the

_____

(1996). Under Fed. R. Crim. P. 14, a court may grant a severance of defendants if the defendant is prejudiced by joinder. In this case, Milton has failed to assert a colorable claim of prejudice that would demonstrate an abuse of discretion by the district court. Thus, we are of opinion that the district court did not abuse its discretion in denying Lewis's motion for severance, if such motion was in fact made.

**8** Defendant made a motion to correct the trial transcript on the basis of this and other alleged statements. However, after reviewing the audio recording of the trial, the defense has agreed that the comment was not made during the trial. See "Notice of Resolution of all Transcript Challenges" (submitted April 7, 1998).

10

government may rely on information contained in the presentence report unless the defendant demonstrates that the information is unreliable. United States v. Gilliam, 987 F.2d 1009, 1014 (4th Cir. 1993). The quantity of drugs attributed to the defendant is a factual determination, and thus we review the district court's findings for clear error. United States v. Daughtrey, 874 F.2d 213, 217 (4th Cir. 1989). Likewise, we review the district court's factual determination regarding Torrance's role in the offense for clear error. United States v. Hyppolite, 65 F.3d 1151, 1159 (4th Cir. 1995), cert. denied, 517 U.S. 1162 (1996).

The presentence report recommended that Torrance be held accountable for 79 kilograms of cocaine and 26.3 kilograms of cocaine base, yielding a base offense level of 38. Torrance argues that the district court should not have included drug quantities based on statements of Ricky Draper in calculating his base offense level.[9] According to the presentence report, Draper told investigators that he met Torrance in the winter of 1994 and that he subsequently began purchasing 1/4 to 1/2 kilogram of cocaine from Torrance on a weekly basis. According to Draper, these purchases continued for at least one year. Based on this information, the probation officer used the lower figure of 1/4 kilogram and calculated the total amount of cocaine powder at 13 kilograms (250 grams x 52 weeks). Draper also stated that Torrance was supplying another individual with 1/2 kilogram of cocaine base on a weekly basis during this period, yielding 26 kilograms of cocaine base (500 grams x 52 weeks). At the sentencing hearing, the government also presented the testimony of Agent Brad Kennon of the Raleigh Police Department, who testified about his interviews with Draper. In response to questioning by the district court, the probation officer indicated that Torrance would have to be found accountable for "[m]ore than 1.5 kilograms" of cocaine base in order to raise the base offense level from a 36 to a 38. The court then found "by a preponderance of the evidence that there is a sufficient

_____

**9** At the sentencing hearing, defendant conceded that an appropriate base offense level without the statements of Ricky Draper would be 34. At that time, the district court found that evidence adduced at trial supported a base offense level of 36. Thus, the issue is whether the testimony of Ricky Draper can be used to increase the base level from 36 to 38.

11

amount of at least 1.5 kilograms and probably significantly more. To raise [the base offense level] to a level 38."[10] Based on our review of the record, we are of opinion that the district court's factual findings as to the amount of drugs attributable to Torrance are not clearly erroneous.

Torrance next challenges the district court's two-level enhancement based on managerial role in the offense.[11] This enhancement is permissible under Section 3B1.1 of the Sentencing Guidelines if the defendant is an "organizer, leader, manager, or supervisor" in the criminal activity. The record evidence supports the district court's application of Section 3B1.1's two-level enhancement to Torrance. For example, the presentence report indicates that Torrance employed couriers to facilitate the transportation of drugs to North Carolina. This statement is supported by the trial evidence. Therefore, we are unable to conclude that the district court's application of a two-level enhancement for Torrance's managerial role in the offense was clearly erroneous. Accordingly, we affirm the sentence imposed by the district court.

G.

Count One of the indictment charged Lewis, Freddie, Torrance, and six other defendants with conspiracy "to possess with intent to distribute cocaine <u>and</u> cocaine base (crack)." (emphasis added). The jury returned a general verdict of guilty on Count One as to all three defendants. The district court sentenced the three defendants based on his findings that the illegal conduct involved both cocaine and cocaine

_____

[10] We note that an offense involving solely 1.5 kilograms of cocaine base is sufficient to establish a base offense level of 38. United States Sentencing Guidelines § 2D1.1. Therefore, the district court's finding that 1.5 kilograms of cocaine base could be attributed to Torrance based on Draper's statements is a sufficient ground for assigning a base offense level of 38, and the court's findings regarding the amounts proven at trial are rendered superfluous.

[11] In his brief, defendant appears to allege that he received either a three or four-level increase. However, the transcript of the sentencing hearing indicates that the district court applied a two-level increase for Torrance's role in the offense.

base. Defendants argue that the general verdict forms are ambiguous because they do not specify the statutory object of the conspiracy under 21 U.S.C. § 846. Defendants claim that it is thus impossible to know whether the jury found each defendant guilty of conspiracy to distribute only cocaine, only cocaine base (crack), or both cocaine and crack cocaine.

In this case, both the indictment and the jury instructions[12] were phrased in the conjunctive, that is a conspiracy to distribute both cocaine <u>and</u> cocaine base. Thus, the jury necessarily found that the defendants were involved in a conspiracy to distribute both drugs, and the district court's sentencing on both was consistent with the indictment and the jury instructions. Moreover, the district court's sentencing for both cocaine and cocaine base accords with the Sentencing Guidelines and the role of the sentencing judge as set forth in <u>Edwards v. United States</u>, 66 U.S.L.W. 4293 (U.S. Apr. 28, 1998) (No. 96-8732). Thus, the district court did not err in sentencing defendants based on both cocaine and cocaine base.

III.

We thus affirm the convictions and sentences of all three defendants.

<u>AFFIRMED</u>

_____

**12** The district court's jury charge included the following statement:

> In the indictment in count one the defendants Torrance Jones, [Freddie] Jones and Milton Lewis are charged with knowingly, intentionally and unlawfully conspiring and agreeing together and with other persons to possess with intent to distribute cocaine and cocaine base. And so the government has to prove that that's what they did. That they had a conspiracy to possess with intent to distribute <u>both</u> cocaine and cocaine base. (emphasis added)

13