**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.                                                                                    No. 00-4085

BRENDA KAY WARE,
<u>Defendant-Appellant.</u>

Appeal from the United States District Court
for the Northern District of West Virginia, at Wheeling.
Frederick P. Stamp, Jr., Chief District Judge.
(CR-97-47)

Argued: April 4, 2000

Decided: August 4, 2000

Before WIDENER and WILKINS, Circuit Judges, and
Claude M. HILTON, Chief United States District Judge
for the Eastern District of Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Elgine Heceta McArdle, MUSSER & MCARDLE, L.C.,
Wheeling, West Virginia, for Appellant. Michael D. Stein, Assistant
United States Attorney, Wheeling, West Virginia, for Appellee. **ON
BRIEF:** Melvin W. Kahle, Jr., United States Attorney, Wheeling,
West Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Brenda Kay Ware was convicted by a jury of one count of conspiracy to defraud the United States, see 18 U.S.C.A. § 371 (West 2000), two counts of aiding and abetting wire fraud, see 18 U.S.C.A. § 1343 (West 2000), and one count of aiding and abetting in the making of a false and fictitious statement, see 18 U.S.C.A. § 1001(a)(2) (West 2000). The convictions arose out of Ware's involvement in a federally funded highway construction project in West Virginia ("the Elm Grove project" or "the project"). Ware appeals her convictions and sentence. We affirm.

I.

The facts relevant to this appeal have been described at length in United States v. Brothers Construction Co., Nos. 98-4613, 98-4694, slip op. at 2-8 (4th Cir. July 6, 2000), and we do not repeat them here. Suffice it to state that Ware is the president of Brothers Construction Company (Brothers), a certified "disadvantaged business enterprise" (DBE). See 49 C.F.R. § 26.5 (1999). According to federal regulations and the West Virginia bid solicitation for the Elm Grove project, the project included a DBE goal of eight percent of the prime contract. See 49 C.F.R. § 26.13 (1999). Tri-State Asphalt Corporation (Tri-State) was the prime contractor on the project, and it had awarded Bunn Construction Company (Bunn) the underdrain subcontract. Ware, Bunn, and Tri-State fraudulently claimed that Brothers performed part of the underdrain work on the project when in fact Bunn, not a DBE, performed it all. See United States v. Johnson, 54 F.3d 1150, 1153 (4th Cir. 1995) (stating that in reviewing a conviction, the facts are viewed in the light most favorable to the government).

2

II.

A.

Ware contends that the prosecutor's failure to disclose notes taken during an interview of a government witness constituted misconduct warranting reversal of her convictions or a new trial.**1** We disagree.

During the course of an audit of the Elm Grove project DBE situation, the investigator for the West Virginia Department of Transportation, Division of Highways ("WVDOH") interviewed Jesse Haynes, the Director of the Equal Employment Opportunity Division of the West Virginia Department of Transportation, at least twice. Haynes subsequently testified at Ware's trial, but the WVDOH investigator's notes of Haynes' interviews were not disclosed to Ware. Ware asserts that the interview notes should have been disclosed, and that the prosecutor's failure to do so violated Federal Rule of Criminal Procedure 16; the Jencks Act, 18 U.S.C.A. § 3500 (West 1985); and Brady v. Maryland, 373 U.S. 83, 87 (1963) (holding that a defendant's due process rights are violated when the prosecution withholds evidence favorable to the defendant that is material to either guilt or punishment), and its progeny. Ware specifically relies on two passages from the investigator's interview notes:

> March 13, 1995 . . .
>
> Mr. Haynes asked why Brothers didn't perform the work

_____

**1** Two of Ware's four arguments on appeal are the same as those raised in the related appeals of Brothers and Tri-State. Specifically, Ware contends that the evidence was insufficient to support the verdict against her, and that the grand jury testimony of unindicted co-conspirator Robert Samol should not have been admitted. The same arguments were forwarded by Ware's codefendants in their appeals, and were rejected, and thus we reject them here as well. See Brothers Constr. Co., slip op. at 8-17; Etheridge v. Norfolk & W. Ry. Co., 9 F.3d 1087, 1090 (4th Cir. 1993) (stating that "[a] decision of a panel of this court becomes the law of the circuit and is binding on other panels unless it is overruled by a subsequent en banc opinion of this court or a superseding contrary decision of the Supreme Court" (internal quotation marks omitted)).

3

on the project. Mr. Haynes stated that Brenda Ware, owner of Brothers Construction, had a baby this past summer and wasn't able to oversee the work on the project. In addition, Ms. Ware had planned on providing project management. Mr. Haynes stated that he talked with Ms. Ware and explained that the DBE had to actually perform the work on the project, as opposed to just providing management.

Mr. Haynes stated that he had no problem with how he handled the situation with regard to Brothers Construction. He felt that reinstatement [as a DBE] was appropriate given the circumstances.

March 28, 1995 . . .

Mr. Haynes stated he still felt decertification of Brothers Construction from the WVDOH DBE program was unnecessary. He stated he had talked with Ms. Ware and he believed that she would not perform in the same manner again.

Mr. Haynes also stated he did not feel referral of the matter to a Federal authority was warranted. He felt since there was no injury to the State and this had been done by other prime contractors, he wouldn't recommend the referral of the matter.

J.A. 1424 n.1.

The district court rejected Ware's arguments related to the Haynes interview notes when it denied her "third motion for arrest of judgment and/or a new trial." Id. at 1422 (internal quotation marks omitted). The court concluded that the prosecutor's failure to disclose the notes did not violate Rule 16, the Jencks Act, or Brady. Prosecutorial misconduct entitles the defendant to a new trial when the improper conduct has prejudicially affected the defendant's substantial rights such that she has been deprived of a fair trial. See United States v. Mitchell, 1 F.3d 235, 240 (4th Cir. 1993). We review the denial of a motion for a new trial for abuse of discretion. See United States v.

4

Huggins, 191 F.3d 532, 536 (4th Cir. 1999), cert. denied, 120 S. Ct. 1968 (2000).

Rule 16 directs prosecutors to disclose statements of the defendant, but specifically excepts "statements made by government witnesses," except as such statements are required to be disclosed by the Jencks Act. Fed. R. Crim. P. 16(a)(2). Thus, even if the interview notes constituted Haynes' statements, the prosecutor did not violate Rule 16 by failing to disclose them unless the Jencks Act required that they be disclosed.

The Jencks Act requires the prosecutor to produce only the statement of a witness. See 18 U.S.C.A. § 3500(b). As relevant here, the Act defines "statement" as the witness' own written statement, "signed or otherwise adopted or approved by him," or an oral statement of the witness that has been transcribed "substantially verbatim." Id. § 3500(e). Although notes taken by an interviewer can be attributed to the interviewee as his statement, such notes will be deemed the witness' own statement only if the witness reviews and adopts the notes. Cf. United States v. Roseboro, 87 F.3d 642, 645 (4th Cir. 1996) (explaining when notes of an interview are to be considered the interviewee's own statement). Ware does not contend that Haynes adopted the interview notes as his own statements.**2** Because there has been neither a claim nor any evidence that Haynes ever reviewed and adopted the notes taken during his interview with the WVDOH investigator, we conclude that the notes were not Jencks material.

We also conclude that the interview notes do not constitute Brady material. In order for their withholding to constitute a Brady violation, the notes must (1) be either directly exculpatory or have impeachment value, (2) have been suppressed by the government, and (3) be material. See Spicer v. Roxbury Correctional Inst. , 194 F.3d 547, 555 (4th Cir. 1999).

_____

**2** Ware argues that the notes should be deemed Haynes' statements because notes made during a similar interview of Ware were deemed her own statement. However, whether Ware reviewed and adopted the notes of her interview has no bearing on whether Haynes reviewed and adopted the notes of his interview.

5

Although Ware claims that the two passages from the Haynes interview notes were exculpatory because they "corroborated her defense at trial, and conflicted with Mr. Haynes' testimony at trial," Brief of Appellant at 41, the passages simply do not possess the value Ware asserts. Ware maintains that the Haynes passages confirm her testimony that she never intended to defraud the Government because she had planned to manage and supervise the work but was unable to do so due to personal circumstances. However, the notes from Haynes' interview merely repeat Ware's claim that she intended to provide management services; the passages in no way corroborate Ware's testimony that she lacked an intent to defraud.

Ware also contends that the interview notes had impeachment value because Haynes contradicted the notes when he testified at trial. However, the trial testimony to which Ware points is not contradictory.**3** Finally, Ware argues that had the interview notes been available, she would have attempted to demonstrate that Haynes believed that Ware's conduct complied with DBE regulations. However, although the passages indicate that Haynes would not have referred the matter to federal authorities, they also clearly indicate that Haynes understood that Ware's conduct was <u>not</u> in compliance with applicable law: Haynes explained to Ware that simply providing management services was insufficient.

Because the prosecutor's failure to disclose the interview notes of Jesse Haynes did not violate Rule 16, the Jencks Act, or <u>Brady</u>, we conclude that the district court did not abuse its discretion in denying Ware a new trial, nor does the nondisclosure warrant a vacation of Ware's conviction.

_____

**3** For example, Haynes was asked at trial whether he recertified Ware as a DBE because he believed her version of what happened; he answered, "No, . . . we recertified her pending the outcome of the investigation." J.A. 264L4. Ware argues that this testimony conflicts with the interview notes because the notes indicate that Haynes felt that reinstatement was appropriate and that he felt decertification was unnecessary. However, the notes simply do not indicate that Haynes believed Ware's story; at best they indicate that Haynes thought decertification was not necessary because he did not believe Ware would repeat the transgression.

B.

The district court enhanced Ware's sentence upon finding that she had obstructed justice. See U.S. Sentencing Guidelines Manual § 3C1.1 (1998). The court found two bases for the enhancement: first, the court found that Ware perjured herself at trial, and second, the court found that Ware obstructed justice during the WVDOH investigation of the Elm Grove project by providing falsified documents attempting to show that Brothers actually worked on the project. Ware argues that the district court erred in basing the enhancement on a finding of perjury. She does not challenge the second basis for the enhancement, however. Accordingly, even assuming that the first basis was improper, the decision to apply the enhancement must be affirmed. See United States v. Ashers, 968 F.2d 411, 414 (4th Cir. 1992) (stating that even if one basis for an enhancement is erroneous, the defendant's sentence must nonetheless be affirmed if the enhancement was properly applied on an alternative basis).

III.

For the foregoing reasons, we affirm both Ware's convictions and her sentence.

AFFIRMED